**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br><br>    Plaintiff, <br><br>    v. <br><br>CESAR I. DIAZ MATOS, ET AL., <br><br>    Defendant/Third Party Plaintiffs <br><br>FEDERACION DE ALCALDES DE PUERTO RICO, INC., ET AL., <br><br>    Third-Party Defendants | Civ. No. 05-1851 (PG) |

**ORDER**

Before the Court is plaintiff United States Fidelity and Guaranty Company's ("USF&G") Motion for Partial Summary Judgment. (Docket No. 44.) For the following reasons the Court GRANTS IN PART AND DENIES IN PART plaintiff's motion.

**BACKGROUND**

This case concerns performance under a construction contract executed on February 27, 2002, between Third-Party Defendants Federacion de Alcaldes de Puerto Rico Inc., (hereinafter "La Federacion") and Defendant/Third Party Plaintiffs Cesar I. Diaz Matos, Cesar Diaz Interior Construction, and Maritere Sanchez-Cruz (hereinafter referred to as "the Diaz defendants").

The construction contract was executed for the rehabilitation and reconstruction of La Federacion's new facilities. Pursuant to the contract, the Diaz defendants had to perform the work for $1,100,408.85 in 180 days, beginning on April 23, 2002. The general conditions of the contract provided that the proceeding to entertain and resolve the controversies and disputes that might arise between the owner and the contractor in the execution of the contract would be according to the mechanism of alternative dispute resolution.

On November 28, 1997, the Diaz defendants entered into a Master Surety Agreement (hereinafter "MSA") with plaintiff USF&G. The MSA contains a clause to hold harmless, indemnify, and keep indemnified USF&G against any claims or

Civ. No. 05-1851 (PG)                                                    Page 2

demands, losses, and expenses in which the latter may incur by reason of having to execute, provide or procure bonds on behalf of the Diaz defendants. The MSA does not incorporate the construction contract. This is why USF&G does not have to submit its dispute arising from the MSA to arbitration.

On August 9, 2005, USF&G filed suit against the Diaz defendants alleging that they had breached the MSA. On November 4, 2005, the Diaz defendants filed a Counterclaim against USF&G and a Third-Party Complaint against La Federacion[1].

Plaintiff now moves for the entry of partial summary judgment against the Diaz defendants on the issue of liability as alleged in Counts I to IV of the Complaint. USF&G argues that the undisputed facts show that these defendants are liable to it pursuant to the MSA. Accordingly, plaintiff seeks enforcement of the indemnity agreement and relief pursuant to the Puerto Rico Civil Code.

### **DISCUSSION**

### I. **Motion for Summary Judgment**

---

[1] The Diaz defendants then filed two motions asking the Court to schedule a hearing pursuant to Federal Rule of Civil Procedure 64 to secure satisfaction of judgment against La Federacion. (Docket Nos. 26 & 35.) Thereafter, La Federacion moved to stay the proceedings, but especially the third-party complaint until the alternative dispute resolution ordered by the state court in KAC 2004-3484, is concluded. (Docket No. 29.) The state court ordered that the controversy between La Federacion and the Diaz defendants be submitted to Alternative Dispute Resolution or arbitration as established in the general conditions of the construction contract executed by the Diaz defendants and La Federacion. The provisions of the contract provide for those claims, which are similar to the ones pending in the present third-party action, to be considered according to the proceedings established by the Construction Industry Arbitration Rules of the American Arbitration Association. (See Docket No. 29, Exhibit 2 at p.6.)

The Diaz defendants' motions for provisional remedy (Docket Nos. 26 & 35) were referred to Chief Magistrate Judge Justo Arenas. (Docket No. 36.) The Magistrate Judge scheduled an evidentiary hearing but instead held a conference in chambers with the Diaz defendants and La Federacion. Thereafter, he issued a Report and Recommendation("R&R"). The Magistrate Judge recommended that the motions for provisional remedy to secure satisfaction of judgment and the third-party action be stayed pending the outcome of Commonwealth court-annexed arbitration as ordered by the Superior Court, San Juan Part, in a case which contains the same parties and the same causes of action as the ones before the court in the third-party action. Because the construction contract entered into by the parties to the third party action clearly contains an arbitration clause that directly relates to the third-party action, the Magistrate Judge determined that the claims should be resolved in arbitration. USF&G did not object to a stay of the third-party action inasmuch as the arbitration clause does not affect or apply to the MSA.

Upon de novo review of the Magistrate Judge's R&R, the Court granted in part and denied in part La Federacion's Motion to Stay proceedings pending arbitration and/or Motion to Dismiss. The motion was granted as to the request to stay the third-party action, and denied as to the requests for dismissal and to stay the entire case. With regards to the motions for provisional remedy, the Court denied it without prejudice pending the outcome of the arbitration proceedings and the reactivation of the third-party claim.

Civ. No. 05-1851 (PG)                                                  Page 3

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc.. 477 U.S. 242, 247-48 (1986). At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).

**II.   Analysis**

USF&G moves for partial summary judgment for defendant's breach of the MSA. It argues that pursuant to the clear terms of the agreement, the Diaz defendants are obligated to indemnify and hold USF&G harmless from and against all demands, claims, liabilities, losses, expenses, costs, damages, attorneys' fees that it may incur as a result of having procured the bonds or due to defendants' failure to perform and comply with the provisions of the MSA. USF&G claims that it has incurred losses and expenses in investigating and litigating defendants' alleged default, defending actions in connection with the bonds, and by having to file this complaint as a result of the Diaz defendants' failure to comply with the provision of the MSA. Plaintiff further claims that pursuant to the MSA it is entitled to collateralization to secure or release USF&G from future liability. Plaintiff claims that it is entitled to relief under §§4911 and 4916 of the P.R. Civil Code. 31 P.R. Laws. Ann.

```
Civ. No. 05-1851 (PG)                                                Page 4
```

§§4911 and 4916(1).

The Diaz defendants oppose plaintiff's request raising a panoply of legal issues, many of which are irrelevant to the subject at hand, namely, whether the Diaz defendants' are liable to USF&G pursuant to the MSA. The essence of the Diaz defendants' argument is that they are nor obligated to indemnify USF&G because there are issues of fact regarding the latter's alleged failure to perform under the indemnity agreement. Accordingly, they claim they are not liable to USF&G under the MSA or the Puerto Rico Civil Code. Defendants also argue that the Court lacks jurisdiction because the case does not meet the jurisdictional amount and that the Court should dismiss Count III of the Complaint.

### A.   Count I (Breach of the MSA) and Count II(Civil Law Indemnity) of the Complaint

The MSA provides in Sections III(A) and (B) that defendants

> shall exonerate, hold harmless, indemnify and keep indemnified, SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT. In order to exonerate; hold harmless, and indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests shall be determined by SURETY.

(See Docket No. 1, Ex. 1.)

It is undisputed that the Diaz defendants executed the MSA containing the above-transcribed indemnity clause and that they bound themselves to it. In other words, there is no controversy as to the fact that they bound themselves to indemnify USF&G. The terms of the MSA are clear and unambiguous.

After reviewing the arguments of the parties, the Court finds that USF&G is entitled to partial summary judgment on the issue of the Diaz defendants' liability pursuant to the MSA. As plaintiff posits, the question is clearly amenable for resolution as a matter of law at this stage.

Civ. No. 05-1851 (PG)                                                    Page 5

Furthermore, this type of claim can be appropriately brought by USF&G under Puerto Rico law. See 31 P.R. Laws Ann §§ 4911-4916; Segovia Dev. Corp. v. Constructora Maza, Inc., 628 F.2d 724, 727 (1st Cir.1980); Professional Underwriters Ins. Co. v. Distribuidora Automotriz, Inc., 121 D.P.R. 536 (1988).

Section 4911 of the Puerto Rico Civil Code law states:

> A surety who pays for a debtor shall be indemnified by the latter.
> The indemnity consists of:
> (1) The total amount of the debt.
> (2) Legal interest on the same from the day on which the payment may have been communicated to the debtor, even when it did not produce interest for the creditor.
> (3) The expenses incurred by the surety after the latter has informed the debtor that he has been sued for payment.
> (4) Losses and damages, when proper.
> The provisions of this section shall be valid, even should the security have been given without knowledge of the debtor.

P.R. Stat. Ann. 31 § 4911. Likewise, section 4916 states:

> The surety, even before paying, may proceed against the principal debtor:
> (1) When he is sued for the payment.
> (2) In case of bankruptcy or insolvency.
> (3) When the debtor has bound himself to relieve him from the security within a specified term, and this term has expired.
> (4) When the debt has become demandable because the term in which it should have been paid has expired.
> (5) At the end of ten (10) years, when the principal obligation has not a fixed term for its expiration, unless it be of such a nature that it cannot be extinguished except in a period greater than ten (10) years.

PR ST T. 31 § 4916. As of the date of filing the Complaint, USF&G had incurred substantial investigative and litigation expenses by reason of executing and providing the bonds. These expenses, losses and damages were paid out in response to claims and demands against the bonds. (See Docket No. 44, Ex. 2, 3, 4, 5, 6; Docket No. 52, Ex. D; Docket No. 55, Ex. 1.) Thus, USF&G properly filed for summary judgment on the issue of the Diaz defendants' liability. A determination regarding damages must await a trial on the merits.

Defendants argue in opposition that pursuant to P.R. Stat. Ann. 31

Civ. No. 05-1851 (PG)                                                   Page 6

§4443[2], USF&G was obligated to comply with certain fiduciary duties to defendants, including the rendering of accounts, prior to filing the complaint. The record and the law does not sustain defendants' position.

The only rights and obligations between defendants and USF&G are contained within the MSA. The MSA does not require USF&G to render any accounts or exhaust any remedies or conditions prior to filing suit. (See MSA, Docket No. 1, Ex. 1 at 3-4.) The MSA clearly provides that USF&G, in its sole discretion, has the right to take the actions that it has taken. Puerto Rico law also supports plaintiff's actions. The Diaz defendants do not dispute the fact that the MSA is an enforceable, binding agreement that defines the rights of the parties. (See Docket No. 52 at 18.)

"Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." P.R. Stat. Ann. 31 § 2994.  Furthermore, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Stat. Ann. 31 §3471. Indeed, "[c]ontracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist." P.R. Stat. Ann. 31 §§ 3451.

To date, the Diaz defendants have failed to comply with their agreed upon obligations to hold harmless, collateralize, or secure USF&G as required by the MSA. Accordingly, plaintiff is entitled to the relief it seeks.

Lastly, defendants' contention that the commercial reasonableness and inherent fairness of USF&G's expenses for which payment is sought is a question of fact to be determined at trial is wholly irrelevant because plaintiff only seeks partial summary judgment on liability. The amount that will ultimately be awarded is not at issue here. Therefore, the Court grants plaintiff's motion as to Counts I & II of the Complaint.

### B.  Jurisdictional Amount

Defendants aver that this Court lacks jurisdiction over the instant matter as a result of USF&G failing to substantiate its assertion that the

---

[2] This section codifies Article 1720 of the Puerto Rico Civil Code: "Every agent is bound to give an account of his transactions and to pay to the principal all that he may have received by virtue of the agency, even though what has been received is not owed to the principal." PR ST T. 31 § 4443

Civ. No. 05-1851 (PG)                                                    Page 7

jurisdictional amount requirement postulated by 28 U.S.C. §1332(a) has been satisfied.

In the complaint, US&G clearly pled that "the matter in controversy exceeds the sum or value of $75,000.00." (Docket No. 1, at ¶ 5.) It further claimed that it had "incurred costs and expenses in defending against and in responding to the various notices, demands and lawsuit in excess of $76,422.80. (See Docket No.1 at ¶15.) As of the date of the filing of the complaint, USF&G had incurred $94,729.00 in losses and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) by reason of having executed and providing AIA Document A312 Performance Bond and Payment Bond No. SA 3333 ("the bonds").(See Docket No. 1, at ¶12, & Ex. C; Docket No. 55, Ex. 1.) Additionally, USF&G received from defendants three separately issued checks, each in the amount of $1,000.00, all of which were accepted by plaintiff "on account", without prejudice to it's rights. (See Docket No. 55, Ex. 1.) After subtracting those payments from the $86,876.00 in losses and expenses incurred by plaintiff, a balance of $83,876.00 still remains due and owing. (Id.)

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289(1938); see also del Rosario Ortega v. Star Kist Foods, Inc., 213 F.Supp.2d 84, 87 (D.P.R.2002). Clearly, plaintiff has met its burden of demonstrating to a legal certainty that its claim meets the jurisdictional amount.

### C.   Quia Timet (Count III)

Plaintiff moves for partial summary judgment on Count III[3] of the

---

[3]   In Count III of the complaint, plaintiff asks the Court to enter an Order:
  (a) preventing the Diaz defendants from diverting or disbursing any funds relating to any bonds without their express and written authorization;
  (b) appointing a receiver to review the project's status and establish a joint control account so the Diaz defendants may not disburse any contract funds without plaintiff's express and written authorization;
  (c) compelling the Diaz defendants to post a bond or other suitable collateral to secure plaintiff's against any potential contingent

Civ. No. 05-1851 (PG)                                                   Page 8

Complaint against the Diaz defendants for injunctive relief under the equitable theory of quia timet.

Defendants oppose plaintiff's request arguing that plaintiff's quia timet request is a claim in an action in quasi-contract and that pursuant to Puerto Rico law, it is not available here because there is a binding contract between the parties that defines the their respective rights and obligations. Defendants further contend that a quia timet action is unconstitutional under Puerto Rico Law because it amounts to a prejudgment attachment order without due process of law. Accordingly, they move to dismiss the quia timet action under Rule 12(b)(6).

Plaintiff's insist that Fed.R.Civ.P. 56 allows for adequate due process as all parties are given the opportunity to brief their positions, submit responses, and request hearings in order to be heard. Plaintiff insists he is not seeking an *ex parte* order attaching the Diaz defendants' property. Therefore, USF&G argues that its request for quia timet relief against the Diaz defendants does not pose any constitutional threat to defendants' due process rights.

Quia Timet (Latin "because he fears") is a "[l]egal doctrine that allows a person to seek equitable relief from future probable harm to a specific right or interest". Black's Law Dictionary, 1283 (8th ed. 2004). See

---

            losses, liability, risk or account for having executed the bonds;
- (d) attaching or freezing the Diaz defendants' assets until an appropriate bond or collateral is posted to adequately protect plaintiff against any potential loss or liability for having executed the bonds;
- (e) requiring the Diaz defendants to render plaintiff full and complete accounting of all assets owed by them or in which they, jointly and severally, have any interest from the time each of them executed either indemnity agreement to the present date;
- (f) requiring the Diaz defendants to allow plaintiff full and complete access to all financial books, records, and accounts maintained by or for them;
- (g) permanently enjoining and restraining the Diaz defendants from selling, transferring, disposing of, or liening any asset or property, and further enjoining and restraining them from allowing any assets or property to be liened, unless and until plaintiff's liability no longer exists and it is made whole for any losses;
- (h) granting a lien upon all asset and property, including realty, in which the Diaz defendants have any interest and that it remain to secure plaintiff against any loss until its liability no longer exists and it is made whole for any losses;
- (I) requiring the Diaz defendants to pay all counsel fees, costs, and expenses which plaintiff has incurred.

Civ. No. 05-1851 (PG)                                                   Page 9

Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 950, n.4 (8th Cir.2004)[4]. "Historically, a bill quia timet was the procedural device by which a court of equity would exercise its jurisdiction 'to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law'." Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 934 F.2d 30, 32 (2nd. Cir. 1991) (quoting Mann & Jennings, Quia Timet: A Remedy for the Fearful Surety, 20 Forum 685, 686 (1985); citing 4 Pomeroy's Equity Jurisprudence §§ 1393-94, at 1021-22 (5th ed.1941).

"Quia timet is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." Borey, 934 F.2d at 32 (citations omitted). "Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor." Id. (citing Filner v. Shapiro, 633 F.2d 139, 142 (2d Cir.1980); 74 Am Jur.2d Suretyship § 174, at 122 (1974); Restatement of Security § 112 (1941)). In other words, quia timet is the "remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation, [whereas] exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor." Borey, 934 F.2d at 32-33.

For a surety to request either exoneration or quia timet, it must established similar substantive elements. Particularly, the "surety must establish that the debt is presently due (exoneration) or will come due ( quia

---

[4] Quia timet is the right to be protected against anticipated future injury that cannot be prevented by the present action. The doctrine of "quia timet" permits equitable relief based on a concern over future probable injury to certain rights or interests, where anticipated future injury cannot be prevented by a present action at law, such as where there is a danger that a defense at law might be prejudiced or lost if not tried immediately. Equity can entertain a bill quia timet to appoint a receiver to protect some interest, to require security, or to compel a debtor to discharge a debt.

27A Am. Jur. 2d Equity § 93 (2007).

Civ. No. 05-1851 (PG)                                                   Page 10

timet), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor." Id. (citing Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2d Cir.1936)). Both remedies "are final remedies which require a determination on their merits before a court may either grant or deny such relief." Borey, 934 F.2d at 33. Notwithstanding, there may be situations when the state of affairs is "deteriorating during the lawsuit and it becomes increasingly likely that if the surety prevails on its claims for equitable relief, it will win a Pyrrhic victory because by that time the principal will be unable to provide the funds that will furnish the quia timet or exoneration relief." Id. Only in these "extraordinary cases the surety may seek a preliminary injunction to maintain the status quo during the trial of the basic action." Id. (citing Glades County v. Detroit Fidelity and Surety Co., 57 F.2d 449, 452 (5th Cir.1932)(preliminary injunction not warranted to enforce surety's rights unless principal is either insolvent or secreting assets). Indeed, a "preliminary injunction grants the plaintiff a measure of his final relief in advance of proving that he is entitled to final relief." Borey, 934 F.2d at 33. It is a drastic remedy. Id.; see also Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 73 (1st Cir.2004).

Having carefully reviewed the record, we find that no extraordinary circumstance has been presented to the district court that would warrant issuing injunctive relief at this time. Plaintiff has not proffered evidence to show that absent equitable relief it will be suffer irreparably harm.

In determining whether to grant preliminary injunctive relief the Court "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1 st Cir. 1996)(citations omitted).

Here, plaintiff has not met its burden of showing that it will suffer irreparable harm. A "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." Borey, 934 F.2d at

Civ. No. 05-1851 (PG)                                              Page 11

34. "Monetary loss alone will generally not amount to irreparable harm." Id.; see Foxboro Co. v. Arabian American Oil Co., 805 F.2d 34, 36 (1st Cir. 1986)(citing Itek Corp. v. First Nat'l Bank, 730 F.2d 19, 22 (1st Cir.1984)("We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue"); see also Freightliner, L.L.C. v. Puerto Rico Truck Sales, Inc., 399 F.Supp.2d 57, 77 (D.P.R.2005)("Loss of income, without more, does not establish irreparable harm.")

Furthermore, the balance of relevant impositions tilts in favor of the defendants. Plaintiff's request in Count III of the Complaint is very far reaching and would impose upon the Diaz defendants a hardship which increases twofold any hardship plaintiff is facing or will face.

In sum, the Court finds that plaintiff's attempt to obtain injunctive relief at this time lacks competent evidence concerning its allegations of irreparable harm and for this reason alone should not prosper. See Matos, 367 F.3d at 73(failure to show irreparable harm is sufficient grounds for denying preliminary relief even if the other requirements of the preliminary injunction standard are met). Therefore, at this stage of the proceedings, and in light of the Court's ruling regarding collateral security, we **deny without prejudice** plaintiff's summary judgment motion as to the injunctive relief request on Count III of the Complaint.

    **D.  Count IV (Demand for Specific Performance of Collateral Security Provision of Indemnity Agreement)**

Section III(B) of the MSA states:

> In order to exonerate; hold harmless, and indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment such funds shall be, at SURETY'S option, money or property, or lines or security interest in property. (The amount of such money or property or the value of the property to become to lines or security interests, shall be determined by SURETY).

(Docket No. 1, Ex.1 at 2.) Plaintiff argues that by virtue of the fact that an action has been brought against it by La Federacion, the Diaz defendants are required to provide it with funds which plaintiff can hold in reserve to offset losses. The parties bargained for the collateral provisions in the MSA. Plaintiff insists that only through the enforcement of its right to

Civ. No. 05-1851 (PG)                                                 Page 12

specifically compel defendants to place Surety in funds reasonably sufficient to secure it from present and future losses can plaintiff receive the benefit of its bargain. To date, the Diaz defendants have failed to hold harmless, collateralize or secure plaintiff as required by the MSA. Furthermore, they have refused plaintiff's demands for security. Accordingly, plaintiff moves for partial summary judgment as to the Diaz defendants' liability to it regarding collateralization[5] and requests specific performance.

Collateral security provisions provide that "once a surety ... receives a demand on its bond, the indemnitor must provide the surety with funds which [it will] ... hold in reserve. If the claim on the bond must be paid, ... the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds." Safeco Ins. Co. of America v. Schwab, 739 F.2d 431, 433 (9th Cir.1984). "Sureties are ordinarily entitled to specific performance of collateral security clauses." Id. "If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." Marine Midland Trust Co. of New York v. Alleghany Corp., 28 F.Supp. 680, 683-84 (S.D.N.Y.1939).

Having reviewed the record, the Court finds that plaintiff is entitled to partial summary judgment as to Count IV of the Complaint. As previously indicated, the contract language is clear and unambiguous. It requires that in the event that plaintiff has to advance its own funds to pay loss adjustment, investigative expenses, or make payments to any claimant under the bonds, the Diaz defendants shall provide plaintiff with collateral security sufficient to cover its potential liability. It is undisputed that plaintiff has incurred substantial investigative and litigation expenses by reason of executing and providing the bonds. These expenses, losses and damages were paid out in response to claims and demands against the bonds. (See Docket No. 44, Ex. 2, 3, 4, 5, 6; Docket No. 52, Ex. D; Docket No. 55, Ex. 1.) Furthermore, it is undisputed that the Diaz defendants have failed to place

---

[5] Plaintiff asks the Court to compel defendants to: (a) secure, collateralize and hold plaintiff harmless according to the terms of the MSA for all potential and contingent liability, loss, risk, obligation or expense asserted against it; and (b) deposit with plaintiff or the court a sum of money or other security equal to that amount required to reasonably protect, secure and collateralize plaintiff against any potential liability, contingent risk or loss on account of having executed the bonds.

Civ. No. 05-1851 (PG)                                                  Page 13

any collateral security with plaintiff. Defendants' only objection is that USF&G is not entitled to collateralization under the MSA because the former breached its fiduciary duties under the MSA and the Civil Code. We already ruled that this argument is without merit.

Accordingly, this Court grants plaintiff's summary judgment motion and finds that defendants are liable to plaintiff for collateral security as per the MSA. See American Motorists Ins. Co. v. Pennsylvania Beads Corp., 983 F.Supp. 437, 440 (S.D.N.Y.,1997).

Having established that defendants are required to deposit collateral security with plaintiff, there remains the issue of how much is required. The record does not provide the Court with sufficient evidence to ascertain said amount. Accordingly, the Court shall schedule a hearing to make that determination. See e.g. American Motorists Ins. Co., 983 F.Supp. at 440.

## CONCLUSION

Wherefore, for the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** USF&G's Motion for Partial Summary Judgment. The motion is granted as to Counts I, II & IV of the Complaint as it regards to the Diaz defendants liability only. The motion is denied without prejudice as to Count III of the Complaint. The Court shall schedule a hearing to determine the amount of the collateral security as per the terms of the MSA.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, March 21, 2007.

                                         S/JUAN M. PEREZ-GIMENEZ
                                         U. S. DISTRICT JUDGE